ISAAC CROSS, one of the executors of George Cross, deceased, *vs.* GEORGE W. CROSS and others.

1. The award which is the subject of controversy in this cause, though omitting to decide a matter expressly submitted to arbitration, yet having been accepted by the parties, and acts having been done to give it effect, must stand and be performed in all things which are decided by it.

2. The meaning and effect of the award construed, and the powers of the arbitrators under the reference settled; matters not within the scope of their authority referred to a master.

This case was argued before Mr. J. Wilson, called by the Chancellor to advise with him. The facts of the case sufficiently appear in the opinion of the master.

*Mr. Ransom*, for complainant.

*Mr. McDonald* and *Mr. Ranney*, for defendants.

THE MASTER. This bill was filed to obtain a settlement of the estate of George Cross, late of the county of Essex, deceased. He died in the year 1856, leaving a will and codicil thereto, which were proved before the surrogate of that county, who granted letters testamentary thereon to Isaac Cross and James Hewson, the executors therein named, who entered upon the discharge of the duties of their office. Isaac Cross, the complainant, is one of the executors, and also a son and devisee of the testator.

The testator devised to his children, Isaac, George W., and Abraham Cross, and Mary J. Swaim, severally, different portions of his real estate, upon condition, however, that the devises shall not take effect until the devisees, respectively, shall have paid certain sums of money, and delivered up certain notes and mortgages, to his executors, as particularly mentioned in the will. Upon the real estate devised to George W. Cross, there were two mortgages existing at the time of the making of the will, and the executors are directed to pay them off, so that George might take the property so devised to him, free and clear of those encumbrances.

The executors are authorized and directed by the will, to take the control of all the real estate so devised to the testator's children, and collect the rents, until the conditions on which the devises were made, are fully complied with by the payment of the money, and the taking up of the notes and mortgages mentioned in the will.

For a time after the decease of the testator, George W. Cross, as agent of the executors, collected the rents of the property so devised; after which his agency was revoked. And as he had collected a considerable amount of rents, and claimed that he was entitled to retain out of them the amount of certain notes and accounts, which he alleged were due to him from the estate, but which the executors were

not willing to allow to the full amount claimed, they brought a suit against him to recover the rents so collected. . An agreement was afterwards entered into between them in relation to the matters so in dispute, and the suit was not brought to trial. By that agreement, George was to be allowed the full amount of those notes and accounts. But the executors afterwards becoming dissatisfied with this, further negotiations were had, and George agreed, by way of compromise, to take one half the amount.

One of the mortgages on the real estate devised to George, and which the executors were to pay off, was given to secure the sum of $503, and it was afterwards agreed between George and the executors, that he should take it up with part of the moneys which he admitted he owed the estate. He did take it up in pursuance of that arrangement. The other mortgage was given to secure a bond for the sum of $1000, and in the proceedings in this case, they are known as "the Nelson bond and mortgage." On the 16th of February, 1860, the executors agreed, in writing, with George, that if he would take up this encumbrance, the same should be allowed him, principal and interest, in settlement, on his delivering to the executors, the said bond and mortgage cancelled. And George did afterwards, on the 20th of the same month, take up said bond and mortgage, and cancelled them, and afterwards delivered them to the arbitrators chosen by the parties, as hereafter mentioned.

The personal property of the testator was considered to be insufficient to pay the debts and claims against the estate, and all parties seem to have acted under the belief that a contribution from the devisees *pro rata,* according to the value of the estate devised to them respectively, would eventually be necessary for that purpose.

The executors filed an account for settlement in the Orphans Court, which was excepted to, and after having been altered in some particulars, was allowed and passed by the court, at April Term, 1861, showing a balance of $1231.77, due to the executors from the estate. In this account the

notes and accounts which George claimed to be due to him from the estate, and which had been the subject of controversy between him and the executors, as before mentioned, are stated to have been paid at half their amount. The sum of $1129 is further stated to be due from the estate to Isaac, on a certain agreement between him and his father, the testator.

After this account had been so passed and allowed by the court, the parties were still dissatisfied, (the two items just mentioned being more particularly objected to,) and further litigation seemed likely to ensue.

It was at length agreed to refer the matters in dispute to William G. Lord, William K. McDonald, and Joseph P. Nichols, arbitrators chosen by the parties, and written articles of submission were executed for that purpose by all of the said devisees. It was thereby agreed that all matters not already acted upon by the court, should be submitted to the arbitrament and final award of said arbitrators, but that, nevertheless, the arbitrators might, if in their judgment they deemed it right, examine into the said notes and accounts which George claimed to be due to him from the estate, and on which he had, as before stated, been allowed one half, and decide how much was due to him on the same. And also that they might take into consideration the agreement under which the Orphans Court had allowed $1129 to Isaac Cross, as before mentioned, and decide how much was due to him thereon.

It is also expressed and agreed in the articles of submission, that the arbitrators "shall find what is due the estate by each heir, including the *pro rata* for each, which we promise to pay to present date." By the word "heir" here used, "devisee" is no doubt meant, and by "*pro rata*," the proportion, which each devisee ought to contribute to pay the claims against the estate.

It is also expressed in the articles of submission, that George W. Cross "agrees to deliver to the said arbitrators the Nelson bond and mortgage, given by George Cross, to be

held by them for settlement on his *pro rata,* per the conditions of the will." And after the arbitrators entered upon the duties of their appointment, he did deliver said bond and mortgage to them, in performance of that part of the agreement.

It is further agreed in the articles of submission, that in order to secure the faithful performance of the award, when made, the said devisees (except Abraham, for whose performance George agreed to go security,) should severally execute to Joseph P. Nichols, one of the arbitrators, leases upon the property so devised to them, respectively, for a term mentioned in the said articles, and that the rents of the same should be collected by an agent, to be appointed by the arbitrators, and be by him paid out "to the parties to whom they might be due, as certified by the arbitrators, according to the award." And this arrangement was to include all creditors of the estate not otherwise provided for. And the manner in which such payments are to be made is particularly specified.

The arbitrators made their award in writing, dated 20th February, 1863. Among other things, it was thereby decided by them that the sum of $659.60 was due to George W. Cross, being the full amount of the notes and claims theretofore compromised at half that sum, as before stated. Also, that $1430.37 was due to Isaac Cross, the complainant, from the estate of the testator, for house and lot No. 22 New street, Newark, conveyed by him to Mary Cross, his mother, and wife of the testator.

The award also states that no evidence had been submitted to the arbitrators " in regard to the amount due from said devisees, or any of them, to the estate of said George Cross, deceased, other than the will of the said testator."

After deciding various matters submitted to the arbitrators by the articles of submission, the award declares that the debts and costs therein mentioned as chargeable to the estate, shall be paid by the said parties, as follows, to wit. by Isaac one-fourth, and the remaining three-fourths by the

other of said devisees *pro rata,* in proportion to the value of the net estate devised to each of them, and such value is stated and decided by the award.

But the award does not decide what is due to the estate by each devisee, although that is one of the matters expressly submitted to the decision of the arbitrators by the articles of submission. They have entirely omitted to make any decision or award upon it. The state of the accounts between the devisees, respectively, and the estate, yet remains, therefore, to be ascertained and settled.

Whether this omission would have been a good ground of objection to the whole award, it is not necessary now to inquire, for the parties to the submission accepted the award, and proceeded to carry it into effect.

The leases contemplated and provided for in the articles of submission, were executed to Joseph P. Nichols, and he, with the advice and consent of the other arbitrators, appointed an agent to collect the rents, who has done so ever since, except the rents of the property devised to George, which have been collected by George himself, and retained in his own hands, by the permission of the arbitrators. This is complained of in the bill as a breach of trust on their part. But as they appear to have acted with commendable motives, and this point was not insisted on in the argument, it is not necessary to remark further upon it.

The award having been accepted, and these acts done to give it effect, it should stand and be performed in all things which are decided by it.

But the meaning and effect of the award are disputed, and the court is called on to construe it, and declare its true meaning in two particulars, to wit, that part which declares what is due to George upon the promissory notes and claims before mentioned, and its operation in regard to the Nelson bond and mortgage.

It is insisted on the one hand, that though the sum of $659.60 is declared by the award to be due to George on said notes, yet that it has been paid to him, and that it was

2 B *

not meant by the award to decide that that sum yet remains to be paid. On the other hand, George insists that amount must be paid to him, as a settled and final balance due to him by the estate.

I am of opinion that the award is to be taken as deciding that the true amount which George was entitled to, originally, on those notes and claims, was that sum, and that the award did not mean to decide, and does not decide, whether it has been paid or not. And, therefore, in taking and stating the account between him and the estate, he is, on the one side of the account, to be credited with that amount, as well as with all other sums justly due him from the estate, and that on the other side, he is to be charged with all sums justly due to the estate from him, and in this way the balance between him and the estate, and whether due from him to the estate, or from the estate to him, is to be ascertained and stated.

The other point in dispute, in relation to the effect and meaning of the award, is whether the Nelson bond and mortgage are to be considered as paid by the estate to George, or not. It is insisted, that as the award says nothing about them, and does not decide that there is anything due to George thereon, that therefore he can claim nothing upon them. But they were paid off and taken up by him, under the written promise of the executors, (who by the will were directed, themselves, to pay them with the moneys of the estate,) that on delivering to them the bond and mortgage cancelled, he should be allowed for them on settlement. He delivered them to the arbitrators, in order that he might be allowed for them on his *pro rata*. There was no question or dispute before the arbitrators, that he was entitled to be so allowed. The submission does not say that the arbitrators are to decide whether anything, and how much, was due to George upon them. It merely says that George shall deliver them to the arbitrators, "to be held by them for settlement on his *pro rata*." He did so deliver them, and they are now in the arbitrators' hands for that purpose. And

George is entitled to credit or allowance for them in the account which yet remains to be taken and stated between him and the estate, in which his *pro rata* contribution to pay the claims against the estate will be ascertained.

It is further claimed on the part of the complainant, that it should be referred to a master to state the accounts between the estate and said devisees, respectively, so as to show the *pro rata* contribution to be made by each devisee, and whether anything, and how much, is due from them to the estate, or from the estate to them. On the part of the defendant, it is insisted that this should be done by the arbitrators, and that the whole matter should be left in their hands, under the authority given to them in the articles of submission.

I am of opinion that the arbitrators have no such power, and that there should be a reference to a master to take and state said accounts, and also an account between the executors and the estate.

The articles of submission have a two-fold character. In the first place, certain matters therein mentioned, are thereby submitted to the judgment and arbitrament of the arbitrators, who are to make their award thereon. And in the second place, it is agreed, that in order to secure the performance of the award, the persons named as arbitrators should have the power under the leases, before mentioned, to collect and dispose of the rents as therein specified. Under the first part of these articles, the persons appointed as arbitrators, acted in that capacity, and made their award, and their powers as arbitrators were thereby performed, and were at an end. Under the second part, they are to act, not as arbitrators, but in the character of trustees, in collecting and paying out the rents ; and the articles by which they are appointed, and from which they derive all their powers, do not give them the power to settle the accounts in the manner before mentioned. That must now be done under the direction of this court, and for that purpose a reference

to a master is necessary. And the master, in taking the accounts, should be guided by the views herein expressed.

. The account allowed in the Orphans Court was not a final account, nor was it meant to be so. It must stand and be observed, in regard to all matters decided by it, except as to the two items which, by agreement of parties, were submitted to the arbitrators, and on which they have decided in their award, to wit, the amount due to George on the disputed notes and accounts, and the sum due to Isaac from the estate, for the house and lot conveyed by him to his mother'.

All proper items of debt or credit, for or against any of the said devisees or the estate, whether before or since the passing of that account, may be considered by the master, and rejected or allowed, according to his judgment, under the evidence which may be produced before him. It is alleged that while George acted as agent for the executors in collecting rents, before the articles of submission were entered into, he collected, or was chargeable with, the rents accruing from the property devised to him, and that he has never accounted for, or paid them to the executors. If the master finds this to be so, he should charge George accordingly,

He should also be charged with all rents of the property devised to him, accruing since he leased the same to Nichols, but should, on the other hand, be allowed for all taxes, insurance, repairs, or other proper expenses paid by him. And hereafter George should not collect or receive any rents of that property. They should be paid to the said trustees, or to their agent, the same as the rents of the property of the other devisees, and as provided for in the articles of submission. And an order should be made, if necessary, that George should in no wise hinder or interfere with them in collecting the same.

I respectfully recommend to the Chancellor to make an order of reference to a master to take said accounts, as before mentioned, and to carry out the views herein expressed.